**UNITED STATES v. SAMUEL DUNKEL & CO., Inc., et al. (two cases).**

District Court, S. D. New York.

July 10, 1945.

John F. X. McGohey, U. S. Atty., of New York City (Laurence H. Axman, Asst. U. S. Atty., of New York City, and D. Boardman Lee and George Arthur Fruit, Attys., Department of Justice, both of Washington, D. C., of counsel), for plaintiff.

Maurice L. Albert, of New York City, for defendants.

BRIGHT, District Judge.

Certain of the defendants move (1) to dismiss the complaint in the first named action upon the ground that it fails to state a claim upon which relief can be granted, (2) because, under rule 41, as to the defendant Dunkel Company, notice of dismissal of another action for the same relief operates as an adjudication on the merits between the parties; and (3), if the motion to dismiss is denied, for a bill of particulars.

In the second action, a similar motion is made upon grounds 1 and 2, and upon the further ground that another action is pending to recover penalties and damages under the same agreement.

Both actions are sought to be maintained under the so-called Informer's Statute (§§ 3490 to 3492, and 5438, of the Revised Statutes, 31 U.S.C.A. §§ 231–233, 18 U.S. C.A. § 80). In the first action, it is alleged that Samuel Dunkel & Co. Inc., between January 28, 1942, and September 3, 1942, entered into eleven contracts, with the Federal Surplus Commodities Corpo-

ration, hereinafter designated as FSCC, "which is an agency of the United States, and all of the officers and employees of which are and were at all times herein set forth persons in the civil service of the United States," for the sale of dried eggs and spray dried eggs. It is further alleged that between August 1 and November 1, 1942, defendants conspired to defraud plaintiff, or a department or officer thereof, by obtaining the payment or allowance of false and fraudulent claims under said/ contracts to plaintiff's damage; and between February 1, 1942, and January 1, 1943, presented for payment or approval, to or by a person or officer in the civil service of the United States, fraudulent and false claims "upon or against the Government of the United States, or a department or officer thereof" for spray dried eggs, which claims were paid by plaintiff; that to obtain such payment, defendants used or caused to be attached to claim vouchers false certificates of grading and weight, indicating tests made upon samples submitted to the Agricultural Marketing Service of the United States Department of Agriculture, which certificates had been issued for lots sampled and inspected by said Marketing Service other than those for which claim was made, and also used false affidavits certifying to the manufacture of spray dried eggs within thirty days of the contract delivery date, whereas such eggs were actually manufactured more than thirty days prior to said date. It is further alleged that among the schemes, tricks, devices and subterfuges so employed by defendants were (a) for the purpose of obtaining approved grading certificates so that the defendant Dunkel Corporation could deliver dried eggs which had been rejected by plaintiff, or which had not been sampled and tested, defendants submitted spray dried eggs, which did conform to the specifications, repeatedly as different and new lots, after changes of markings, and upon receipts of grading certificates, defendants delivered other dried eggs which had been rejected and not tested; (b) caused samples of egg powder to be switched, so that samples submitted for inspection and testing were not those taken by plaintiff's inspectors; (c) caused identifying marks on lots and barrels of rejected eggs to be changed to conform falsely and fraudulently with markings of lots purportedly certified as satisfactory; (d) caused barrels of uninspected dried eggs to be marked with identifying markings of grading certificates falsely obtained to in-

duce their acceptance by plaintiff; (e) as a result dried eggs were delivered to plaintiff contrary to the requirements of the contract; (f) egg yolks were mixed with whole liquid eggs and dried with them so that the resulting powder was different in quality from that required by the contracts; and (g) false and fraudulent vouchers were submitted to plaintiff claiming payment for spray dried whole eggs delivered by representing them to be eggs covered by grading certificates and affidavits. It is further alleged that approval of payment by plaintiff was thus obtained, that the spray dried eggs did not meet the specifications, all to plaintiff's damage.

In the second action, it is alleged that between March 1, 1942 and September 30, 1942, defendants conspired to defraud the Government, or a department or officer thereof, by obtaining, or aiding to obtain payment or allowance of false or fraudulent claims, in making or in causing to be presented for payment or approval to or by a person or officer in the civil service of the United States, claims "upon or against the Government of the United States, or a department or officer thereof," and for the purpose of obtaining payment or approval of said false and fraudulent claims, knowingly used false vouchers and affidavits. It further alleges that on or about March 28, 1942, the FSCC entered into a contract with the defendant Samuel Dunkel & Co., Inc., under which the defendant agreed to package between 3,000,-000 and 5,000,000 pounds of dried whole eggs, owned or to be owned by the FSCC; that on August 7, 1942, the FSCC, pursuant to that contract, caused 20 barrels of dried whole egg theretofore manufactured by Bowman Dairy Company, and 109 barrels theretofore manufactured by Wisconsin Dried Egg Company, to be shipped to the defendant Dunkel Corporation, and on July 31, 1942, caused 4 barrels of dried whole egg, theretofore manufactured by Christian & Co., Inc., also to be shipped to the defendant corporation. It is further alleged that all of the barrels and contents were the sole property of the FSCC, that the defendants caused the symbols and identifying markings placed on the barrels to be removed and other symbols and markings to be placed thereon to destroy the identity thereof so that they might be sold to the plaintiff through the FSCC, and on August 25, 1942, defendants delivered to the FSCC the 20 barrels previously referred to, on September 4, 1942, also delivered the 113 barrels previously men-

tioned, under a contract then subsisting between FSCC and the defendant corporation, all of which barrels were already the property of FSCC, after removing upwards of 3,000 pounds of dried whole egg belonging to the plaintiff, of the value of $3,500 and wilfully converting the same to their own use; that on August 25, 1942, the defendants caused to be presented for payment or approval to or by a person or officer in the civil service of the United States, a false and fraudulent voucher upon or against the FSCC in the sum of $62,400, of which $4,160 was on account of the 20 barrels previously mentioned, which voucher was thereafter paid by plaintiff, and on September 4, 1942, presented for payment or approval, to or by such person or officer, another false and fraudulent voucher in the sum of $31,517 of which $20,862.62 was on account of the 113 barrels previously mentioned, and obtained payment therefor from plaintiff. It is further alleged that in order to obtain such payment, the defendants attached to the claim vouchers a grading or inspection certificate knowing that such dried whole egg had not been inspected or approved, all to the plaintiff's damage.

I. Defendants urge in both actions that the complaint must be dismissed because it fails to show that the defendants, or any of them, made to a person or officer in the service of the United States any claim upon or against the Government of the United States or any department or officer thereof.

Section 231 of Title 31 U.S.C.A., R.S. §§ 3490 and 5438, provides, among other things, that any person not in the military or naval forces of the United States, or in the militia (these defendants are not), who shall make or present, or cause to be made or presented, for payment or approval, to or by any person or officer in the civil service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses or causes to be made or used any false bill, voucher, certificate or affidavit knowingly, or who enters into any conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim, shall forfeit and pay to the United States the sum of $2,000,

and in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such action.

Upon a motion to dismiss, the allegations of the complaint are deemed to be true. Thus the admitted allegations are that the FSCC, with whom the contracts were made, was an agency of the United States, and all of its officers and employees were persons in the civil service of the United States, that the false and fraudulent claims were presented pursuant to a conspiracy to defraud the plaintiff, were presented for payment or approval to or by a person in the civil service of the plaintiff, were upon or against the Government of the United States, or a department or officer thereof, were paid by the plaintiff, and plaintiff was damaged thereby. Even were these facts not admitted, this court would take judicial notice that the FSCC and its employees and officers are in the civil service of the Government.

The obvious purpose and intent of this statute was to reach any person who knowingly caused or assisted in causing the Government to pay claims which were grounded in fraud, without regard to whether the person had direct contractual relations with the Government, as well as those who received money from the Government as a result of their fraud. There is not to be so strict a construction as urged by the defendants. United States ex rel. Marcus v. Hess, 317 U.S. 537, 544, 63 S.Ct. 379, 87 L.Ed. 443.

II. This part of the motion affects only the Dunkel Company.

Rule 41(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, permits a voluntary dismissal of an action by the plaintiff, "Subject to the provisions of Rule 23(c) and of any statute of the United States," without order of the court by filing a notice of dismissal at any time before answer or by filing a stipulation signed by all parties who have appeared. "Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim."

The rule is expressly made subject to any statute of the United States, and the note to it states that the provisions of § 232 of Title 31 U.S.C.A. are thus pre-

served. Section 232 expressly provides that a suit under the Informer's Statute "shall not be withdrawn or discontinued without the consent, in writing, of the judge of the court and the district attorney, first filed in the case, setting forth their reasons for such consent."

■ Three prior actions involving somewhat similar relief as here sought were started and discontinued.

In the first of the present actions, the contention is that a kindred action was begun in the United States District Court for the Northern District of New York, by the United States of America against Samuel Dunkel & Co., Inc., et al., file No. Civil 1256. That action was begun on May 4, 1943, and before the commencement of this action, there was filed in the office of the clerk of that court by the United States Attorney for the Northern District, a notice of dismissal pursuant to the provisions of Rule 41.

In the second case, the contention is that on May 11, 1943, an action was commenced by plaintiff against Samuel Dunkel & Co. Inc. and others in the District Court of the United States for the District of New Jersey, under file No. 2887, based on and including the same claim as in the complaint here; and that before the commencement of this action, there was filed in the office of the clerk of the New Jersey District Court, a notice of dismissal pursuant to Rule 41.

On May 18, 1943, an action was begun in this court entitled "The United States of America ex rel Matthew Luce, the junior of that name, plaintiff, against Samuel Dunkel & Co. Inc., defendant," Civil No. 21—206. On or about November 8, 1943, the attorneys for Mr. Luce and the Dunkel Corporation filed a stipulation of dismissal of that suit, and the clerk of this court entered upon that stipulation an order dismissing the same. No written consent to this dismissal was obtained from the District Attorney or Judge, as required by Title 31 U.S.C.A. § 232. There was, therefore, no dismissal as contemplated by Rule 41.

The United States in the other two suits dismissed them by stipulation of its attorney. But that dismissal does not foreclose this plaintiff under Rule 41, and such prior dismissal does not operate as an adjudication upon the merits. There has been no second dismissal. The bar of the rule only applies to a plaintiff "who has once dismissed in any court of the United States or of any state an action based on or including the same claim." The dismissal of the informer's suit brought by Luce was not a dismissal by the United States; in fact, it was not a dismissal, no consent of the District Attorney or Judge having been obtained.

There has been no showing here which would bring into play Rule 41 as any bar to the present litigation.

■ III. Dismissal is sought of the second named action because of the pendency of the first one, and is based on the fact that in the first action Civil 31—76 the same contracts are involved under which penalties and damages are sought in the second action Civ. 31—77, and particular reference is made to paragraphs 17 and 18 of the complaint.

There is no similarity in the two complaints. The frauds for which recovery is sought in the first named action were committed under contracts to manufacture and sell egg powder. The frauds alleged in the second action were committed under the contract by which defendant agreed to package egg powder manufactured by other manufacturers. In the first action, defendants sold and received payment for defective, untested and uninspected powder. In the second cause of action, they are charged with converting to their own use, and thereafter selling and receiving payment for, egg powder not manufactured by them, delivered to them for packaging, and which at all times belonged to the Government. There is no similarity between the two actions. The defendants are not asked to pay the same damages in each, and the mere fact that the deliveries, as their own, of egg powder not belonging to them but to the plaintiff, were made under the contracts or some of them the subject of the first named action, does not make the two actions similar.

■ IV. The demand for particulars is under 48 subdivisions, covering 3½ pages of single spaced typewriting. It asks, (1) as to paragraph 11 of the complaint, the powers, duties and rights of the FSCC, and whether it was created orally or in writing, and the substance of any oral or written declaration creating it; (2) date and place of the conspiracy; names of conspirators, and the substance of any oral or written agreement upon the subject; (3) the names of the persons to whom claims were presented for approval or payment, the nature of the claims and against whom,

the dates and places of deliveries of dried whole eggs, whose moneys paid for it, and in what manner and for whose account, whether by check, upon what bank and the source of the funds from which paid; (4) the names of the defendants who made false certificates, what statements made were false, and the items of damage sustained by relying upon such statements; (5) under what contracts affidavits were submitted, the damage sustained in reliance thereon, and which of the defendants knew the affidavits were false or were reckless with the truth thereof; (6) a statement of the amount, contract and lot number of all rejected dried eggs, date of rejection and the amount rejected on each date, the amount and contract and lot number of dried eggs not tested, the dates and amounts of each delivery thereof, description and number of lots which were repeatedly submitted for sampling, copies of the applications for sampling which represented new lots, copies of all grading certificates issued fraudulently and for fictitious lots; the names of the defendants who switched samples of powder, dates and places where switched, who of the defendants changed the identification marks, amounts changed and marks as they appear before and after, dates and places of delivery, lot numbers, warehouse numbers and amounts of dried eggs not manufactured within 30 days of delivery, date when manufactured, copies of all false affidavits, damage sustained by use of such affidavits, times and places, amounts and lot numbers of dried egg manufactured from liquid egg mixed with egg yolk, damage and basis of computation thereof sustained by such mixing and copies of the vouchers under which defendants claimed payment; (7) respects in which the eggs had not passed the tests and the lot numbers of such eggs; (8) the names of the persons approving the alleged false claims, their title and dates, and by what department employed and the amount of damage and basis of computation alleged; and (9) as to the respect in which the dried eggs were defective, giving lots and amounts, and the basis of the computation of damage alleged to have been sustained because thereof.

I have purposely briefly summarized the extent to which this demand for a bill of particulars has gone. If all of the particulars sought were alleged in a complaint, such a document would in every way offend Rule 8. The obvious purpose of the present demand is not to obtain a more definite statement to enable defendants to prepare a responsive pleading. Its very prolixity proves that and alone justifies a denial of the motion. This, coupled with the fact that the complaint is drawn in such a fashion that defendants can very easily answer, also requires such a denial.

The motion is in all respects denied.